STATE OF MISSOURI, at the Relation of ROY AVERILL, Secretary-Treasurer of the State Board of Registration for Architects and Professional Engineers, Relator, v. FORREST SMITH, State Auditor of the State of Missouri.—No. 38532.—175 S. W. (2d) 831.

Court en Banc, December 6, 1943.

*A. L. McCawley* for relator.

24

*Roy McKittrick,* Attorney General, and *Lawrence L. Bradley,* Assistant Attorney General, for respondent.

26

DOUGLAS, C. J.—This is an original proceeding in mandamus brought by the secretary-treasurer of the Board of Registration of Architects and Professional Engineers to compel the State Auditor to issue two warrants requisitioned by the board for the payment of obligations incurred by the board.

The board was created by the legislature in 1941. 1941 Laws, 655. The act creating it directed the board to appoint a secretary-treasurer, authorized it to employ assistants, and to purchase supplies. Money collected by the board was to be kept in a separate fund and none of its expense was to be paid out of any other fund. Payments from the fund were to be made by warrants of the State Auditor issued upon the requisition of the board.

On November 24, 1941 the board appointed relator secretary-treasurer at a salary of $4,200 per year. One of the warrants requisitioned is to pay relator's claim for salary from the date of his appointment to October 31, 1942 in the sum of $3,931.66. The other warrant is to reimburse relator for a typewriter purchased by him for the board for $93.56. To pay these and other obligations of the board the legislature in extra session appropriated $30,393.01. The governor vetoed all but $3,000 of the appropriation. 1942 Laws Extra Session, 18, 19. The next legislature (1943) appropriated from the fund collected by the board, the balance of $27,393.01 to cover obligations incurred during the period from the appointment of the board to December 31, 1942. The governor gave only qualified approval of this appropriation stating he had the assurance of the State Auditor that no warrant for any part of the appropriation would be issued until the validity of the appropriation for the payment of these and other claims was determined by this court. The record before us carries a statement of the State Auditor that he is refusing to issue the warrants on the advice of the attorney general.

■ Section 48, Article IV of the Constitution provides: "The General Assembly shall have no power to . . . pay nor authorize the payment of any claim . . . created against the State . . . under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void."

Section 5 of the act creating the board states: "The Board shall appoint a secretary who shall also be the treasurer of said Board. . . ." Section 6:—"The Board shall have power to employ such consultants . . . and may make expenditures of the fund herein provided for any purpose which in the opinion of the Board is reasonably necessary for the proper performance of its duties under this Act, including the purchase of supplies . . ." Section 8:—"The compensation of all employees shall be . . . commensurate with their duties . . ." These sections ■ expressly authorize the contracts upon which the claims here involved are based and the constitutional prohibition is not applicable to them.

Nor has Section 44, Article IV of the Constitution any application to the claims. It provides: "The General Assembly shall have no power to contract or to authorize the contracting of any debt or liability on behalf of the State, or to issue bonds or other evidences of indebtedness thereof, . . ." This section is a restriction on the power of the legislature to raise revenue through the issuance of bonds and otherwise.

■ The provisions of the present budget act adopted in 1933 do not govern the claims. Sections 10895-10909 R. S. 1939. It is true the budget act applies to each department of government which is deemed to include a board or other agency of the State. However, it provides a time table for the steps required for its application and operation. Before November 1st in the year preceding the regular biennial session of the legislature each department must submit to the budget director an estimate of its needed appropriation for the ensuing biennium. The budget director prepares an estimate of expected revenue for each fund. He turns over both estimates to the governor who in turn prepares a final budget to be laid before the legislature not more than three weeks after it convenes. The legislature makes the appropriations and submits them to the governor for his approval. After appropriations are approved each department must submit to the budget director a work program and a schedule of its proposed year's expenditures together with a request that its appropriation be separated into quarterly allotments in accord with the proposed expenditures as to both time and amount. After all this has been done still no obligation may be incurred or an expenditure made unless the auditor shall first furnish a certificate not only that the fund to be charged has a sufficient cash balance but that the

allotment for the period also has a sufficient balance to cover such obligation.

The scheme of the budget act is prospective in its operation as a budget based on future estimated income must necessarily be. The act, when adopted, governed departments which were functioning under appropriations which had already been made for the ensuing biennium. These departments had the wherewithal to sustain themselves until they could receive future appropriations upon compliance with the act.

The budget act makes no provision for newly created departments. Under a strict construction of the act they would be forced to mark time until the following legislature, two years later, could provide for their maintenance and operation. Such was not the intent of the legislature either in passing the budget act or in creating the board. The budget act was not designed to nor could it restrict a future legislature from creating a new department and providing for its immediate operation.

The act creating the board required the appointment of the members of the board by the governor within twenty days after the act became effective. Within thirty days after their appointment the members were required to hold their first meeting. During the first year of the operation of the act the board was required to register upon application those who were engaged in architecture or engineering at the time the act became effective. Thus the legislature intended the board to commence operation without delay, not to wait idle until the succeeding legislature should appropriate funds and the budget director should make the quarterly allotments of them. Certainly no board can operate without a secretary and a typewriter.

The restrictions of the budget act would prevent the immediate functioning of the board because it could appoint no secretary or assistants and could obtain no equipment for its operation until its appropriation and allotment would be made some two years hence. In this respect the two acts are in conflict. The act creating the board, being the later one, must prevail. As above pointed out, it expressly authorizes the board to make appointments and to purchase supplies necessary for the performance of its duties. No doubt, after sufficient time has elapsed to enable the board to comply with the time table set up by the budget act and the conflict disappears the board will come within its terms, but the budget act does not apply to the obligations here involved nor in any way affect their legality.

For the same reasons the requirement that the purchase of all supplies be through the State Purchasing Agent does not govern the purchase of the typewriter. Secs. 14589-14602 R. S. 1939. Section 14592 prohibits the purchasing agent from furnishing any supplies "without first securing a certification from the auditor that an unencumbered balance remains in the appropriation and allotment

to which the same is to be charged and that an unencumbered balance remains in the fund from which payment is to be made, each sufficient to pay therefor.'' When the typewriter was acquired there was no appropriation or allotment, so that the purchasing agent could not have made the purchase if the board had asked him to do so. This act likewise fails to provide the means for newly created boards to go into operation immediately upon being created.

The claims are valid and the State Auditor should honor the board's requisitions for warrants. Accordingly, it is ordered our peremptory writ of mandamus be issued. All concur.